UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD, ILLINOIS

| | |
|---|---|
| JEANINE M. O'SHAUGHNESSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  2017-cv- |
| ) | |
| HSHS MEDICAL GROUP, INC. ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff, JEANINE M. O'SHAUGHNESSEY, by her attorneys, Colleen Lawless and Ashton Nowlan of Londrigan, Potter, & Randle, P.C., complaining of Defendant, HSHS MEDICAL GROUP, INC. (hereinafter "Defendant"), states:

### JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331. This action is authorized and instituted pursuant to the Americans With Disabilities Act (hereinafter "ADA"), 42 U.S.C. § 12101 et. seq. and the Family and Medical Leave Act (hereinafter "FMLA"), 29 U.S.C. § 2601 et. seq.

2. The unlawful employment practices hereinafter alleged took place in the geographical boundaries of the Springfield Division of the Central District of Illinois.

### Parties

3. Plaintiff, during all relevant times herein, was an adult female resident of Chatham, Illinois. Plaintiff currently resides in Monroeville, Indiana.

4. During all relevant times herein, Defendant, HSHS MEDICAL

1

GROUP, INC., was a company organized under the laws of the State of Illinois, doing business in the Central District of Illinois.

5. Defendant hired Plaintiff for the position of Service Line Manager-LeadWell in January of 2014. On or about November of 2015, Plaintiff was promoted to Director of Clinical Services-LeadWell.

6. On or about February 5, 2016, Defendant terminated Plaintiff's employment.

7. At all relevant times, Plaintiff worked for Defendant in Springfield, Illinois.

## COUNT I
## AMERICANS WITH DISABILITIES ACT
## DISABILITY DISCRIMINATION

1-7. Paragraphs 1 through 7 are incorporated herein by reference as if fully pleaded as paragraphs 1 through 7 of Count I.

8. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. § 2000e-5(f)(1) and (3), pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C.A. § 1981a.

9. While Plaintiff worked for Defendant, Plaintiff was both an employee and a qualified individual within the meaning of 42 U.S.C. § 12111(4) & (8).

10. When Defendant fired Plaintiff, Plaintiff was disabled within the meaning of one, two or all three prongs of: 42 U.S.C. § 12102(1)(A),(B) and/or (C).

11. Plaintiff is a qualified individual with a disability within the meaning of the ADA, in that she suffers from a reoccurring chronic condition of rheumatoid arthritis, which can restrict her from walking, lifting, and using her hands and shoulders.

12. At all relevant times herein, Defendant was doing business in the Central District of Illinois and was a covered entity and Plaintiff's employer within the meaning 42 U.S.C. § 12111(2) & (5).

13. On or about August 2, 2016, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission. The charge was filed within three-hundred (300) days after the occurrence of one or more of the unlawful employment practices alleged herein, a true and exact copy of which is attached as Plaintiff's Exhibit A.

14. The EEOC issued Plaintiff a Notice of Right to Sue letter, dated October 10, 2017, which was received on October 13, 2017, stating that Plaintiff could file an action under the ADA. A true and exact copy is attached hereto as Plaintiff's Exhibit B.

15. Plaintiff filed the Complaint in this case within ninety (90) days after the date on which she received the Notice of Right to Sue and a copy was furnished to the EEOC on the same day the Complaint was filed in this Court. A copy of the EEOC letter is attached hereto as Exhibit C.

16. Consequently, all jurisdictional prerequisites to the institution of this lawsuit have been fulfilled, and Plaintiff has exhausted her administrative remedies as required by law.

17. At all relevant times, Plaintiff has had a physical disability within the meaning of the ADA, as her reoccurring chronic condition of rheumatoid arthritis substantially limits the major life activities of walking, lifting, and using her hands and shoulders due to excessive pain and swelling.

18. On or about June or July of 2015, Plaintiff's co-worker left a note on Plaintiff's car, while it was parked in a handicap parking space, which stated she should not be selfish and park in a space reserved for someone in need.

19. On or about June or July of 2015, Plaintiff discussed the note she received from her co-worker with Penny McCarty, Defendant's Chief People Officer. Plaintiff informed Ms. McCarty that she had a chronic condition, rheumatoid arthritis, for which she had been issued a handicap permit. After this incident took place, Plaintiff was upset and afraid to utilize the designated handicap parking space for several weeks.

20. Defendant was aware of Plaintiff's reoccurring chronic condition of rheumatoid arthritis because Plaintiff discussed her need to park in the handicap parking spaces with Defendant's Human Resources Department and Penny McCarty, Defendant's Chief People Officer.

21. On or about July or August of 2015, Plaintiff received her annual performance evaluation. The evaluation indicated that Plaintiff had met the expectations of her position.

22. After Plaintiff's annual evaluation, she met with her supervisor Janet Seiler, Defendant's Chief Program Integration Officer, every other week to

discuss projects and agendas. At no time did Ms. Seiler state Plaintiff was not meeting expectations.

23. In late January of 2016, Plaintiff contacted her supervisor, Janet Seiler, Chief Program Integration Officer, by telephone, wherein Plaintiff informed Ms. Seiler that she may need to take a leave of absence in the near future due to the reoccurrence of her chronic condition, rheumatoid arthritis.

24. On or about February 4, 2016, Plaintiff contacted Defendant's Human Resource Department and spoke with Sara Wessbecher regarding her potential need for FMLA leave and the FMLA process. Ms. Wessbecher gave Plaintiff the contact information for Defendant's FMLA provider.

25. At that time, Plaintiff's physician had not determined whether FMLA leave was necessary or a reasonable accommodation would be sufficient.

26. On or about February 5, 2016, Plaintiff was asked to a attend a meeting with Janet Seiler, Defendant's Chief Program Integration Officer, and Penny McCarty, Defendant's Chief People Service Officer.

27. During the meeting, Plaintiff was terminated. First, Ms. Seiler and Ms. McCarty told Plaintiff her position was being eliminated. Then, they stated Plaintiff was being terminated for not meeting the expectations of her position.

28. Plaintiff performed her job duties in a satisfactory manner and did not receive any verbal or written discipline prior to being fired by Defendant.

29. At the time Defendant fired Plaintiff, Plaintiff could have performed the essential functions of her job despite being substantially limited in her ability to walk, lift, and use her hands because of her rheumatoid arthritis.

30. Defendant unlawfully discharged Plaintiff because of her disability.

31. Defendant's employment practices, as alleged above, deprived Plaintiff of equal employment opportunities and otherwise adversely affected her status as an employee, and were the result of Plaintiff's disability. As a result of Defendant's conduct, Plaintiff has suffered lost wages, loss of medical benefits, and extreme mental anguish and emotional distress.

32. On or about February 5, 2016, when Plaintiff was fired, she had a reoccurring chronic condition, rheumatoid arthritis, that substantially limited one or more major life activities, to include but not limited to walking, lifting and using her hands and shoulders and at the same time was able to perform the essential functions of her job with Defendant; and thus, was a qualified individual with a disability within the meaning of 42 U.S.C. § 12102(1)(A).

33. In addition and/or in the alternative to paragraph 32, on or about February 5, 2016, when Plaintiff was fired, Plaintiff had a history of a rheumatoid arthritis, within the meaning of 42 U.S.C. § 12102(1)(B) and was also able to perform the essential functions of her job with Defendant.

34. In addition and/or the alternative to paragraphs 32 and 33, on or about February 5, 2016, when Plaintiff was fired, Defendant regarded Plaintiff as having a chronic condition-rheumatoid arthritis, within the meaning of 42 U.S.C. § 12102(1)(C).

35. Defendant fired Plaintiff because she was disabled in violation of the ADA.

36. In addition and/or in the alternative to paragraph 35, Defendant fired Plaintiff because Defendant regarded her as having a reoccurring physical impairment, rheumatoid arthritis.

37. Defendant's employment practices, as alleged above, deprived Plaintiff of equal employment opportunities and otherwise adversely affected her status as an employee, and were the result of Plaintiff's disability. As a result of Defendant's conduct, Plaintiff has suffered lost wages, loss of medical benefits, and extreme mental anguish and emotional distress.

38. The acts alleged above constitute unlawful employment practices in violation of the ADA, 42 U.S.C.A. § 12112(a) & (b). All conduct alleged above occurred during a legally cognizable time period at in Springfield, Illinois, which is located in the Central District of Illinois.

39. Defendant engaged in the above-described conduct against Plaintiff with malice and in reckless disregard of Plaintiff's federally protected rights under the ADA.

WHEREFORE, Plaintiff, JEANINE M. O'SHAUGHNESSEY, respectfully requests a judgment against Defendant, HSHS MEDICAL GROUP, INC., with damages to include:

    (a) Economic damages in the form of lost back pay, front pay, benefits, and other pecuniary losses, together with interest as permitted by law;

    (b) Compensatory damages for Plaintiff's mental anguish, pain and suffering, and other pecuniary losses;

    (c) Punitive damages in an amount to be decided at trial;

    (d) Plaintiff's attorney fees and costs of this action;

(e) Other affirmative relief necessary to eradicate the effect of Defendant's unlawful employment practices, including reinstatement; and

(f) For such other and further relief as this Court deems necessary and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

## COUNT II
## FMLA INTERFERENCE & RETALIATION

1-7.     Paragraphs 1 through 7 are incorporated herein by reference as if fully pleaded in Count II.

8.     While Plaintiff was employed by Defendant, Defendant was an "employer" within the meaning of the FMLA. 29 U.S.C. §2611(4).

9.     Starting in January of 2014 and continuing until her employment was terminated by Defendant, Plaintiff was an "eligible employee" within the meaning of the FMLA. 29 U.S.C. §2611(2).

10.     On or about November 27, 2005 and continuing thereafter, Plaintiff suffered from a serious health condition, rheumatoid arthritis.

11.     Defendant was aware of Plaintiff's serious health condition, rheumatoid arthritis because Plaintiff discussed her need to park in the handicap parking spaces at work with Defendant's Human Resources Department and Penny McCarthy, Defendant's Chief People Officer.

12.     Plaintiff informed Penny McCarthy, Janet Seiler, Dan Holden, Vince Noel, Karen Gleave, Jerry Cunningham and Kathy Johnson of her condition.

13.     Defendant's Chief Executive Officer, Melinda Clark, and Vice President of Business Development, Vince Noel, both told Plaintiff that she

8

should take care of herself due to the amount of pain she was in.

14.     Defendant's employees made negative comments toward Plaintiff regarding her medical condition which were reported to Defendant's Human Resources Department and Chief People Officer.

15.     In late January of 2016, Plaintiff contacted her supervisor, Janet Seiler, Chief Program Integration Officer, by telephone, wherein Plaintiff informed Ms. Seiler that she may need to take a leave of absence in the near future due to the reoccurrence of her chronic condition, rheumatoid arthritis.

16.     On or about February 4, 2016, Plaintiff contacted Defendant's Human Resource Department and spoke with Sara Wessbecher regarding her potential need for FMLA leave and the FMLA process. Ms. Wessbecher gave Plaintiff the contact information for Defendant's FMLA provider.

17.     At that time, Plaintiff's physician had not determined whether FMLA leave was necessary or a reasonable accommodation would be sufficient.

18.     On or about February 5, 2016, Plaintiff was asked to attend a meeting with Janet Seiler, Defendant's Chief Program Integration Officer, and Penny McCarty, Defendant's Chief People Service Officer.

19.     During the meeting, Plaintiff was terminated.  First, Ms. Seiler and Ms. McCarty told Plaintiff her position was being eliminated. Then, they stated Plaintiff was being terminated for not meeting the expectations of her position.

20.     During the period between December of 2015 through February of 2016, Plaintiff suffered from a serious health condition within the meaning of the FMLA.

21.     On or about February 5, 2016, Defendant terminated Plaintiff, in violation of Plaintiff's FMLA rights.

22.     At all relevant times, 29 U.S.C. § 2615 mandated that it is unlawful for an employer to interfere with an employee's FMLA protected rights.

23.     By terminating Plaintiff's employment when she should have been allowed to request and take FMLA leave, while still maintaining her position as Defendant's Director of Clinical Services--LeadWell, Defendant, by and through its agents and employees, violated the FMLA.

24.     By terminating Plaintiff's employment when she should have been allowed to request and take FMLA leave, while still maintaining her position as Defendant's Director of Clinical Services--LeadWell, Defendant, by and through its agents and employees, willfully and intentionally discriminated against Plaintiff in violation of the FMLA.

25.     When Plaintiff's employment was terminated by Defendant, Defendant retaliated against Plaintiff for trying to exercise her FMLA rights.

26.     In the alternative, Plaintiff trying to exercise her FMLA rights was a motivating factor in Defendant's decision to terminate her employment.

27.     By interfering with Plaintiff's FMLA rights, Defendant did not act in good faith and willfully violated the FMLA.

28.     By retaliating against Plaintiff for exercising her FMLA rights, Defendant did not act in good faith and willfully violated the FMLA.

29. As a direct and proximate result of Defendant's interference and/or retaliation, Plaintiff suffered damage to include but not limited to lost compensation and benefits, and incurred medical expenses.

WHEREFORE, Plaintiff, JEANINE M. O'SHAUGHNESSEY, respectfully requests a judgment against Defendant, HSHS MEDICAL GROUP, INC., with damages to include:

(a) All wages, employment benefits, medical expenses incurred, and other compensation denied or lost because of the FMLA violation(s);

(b) Interest on (a) above calculated at the prevailing rate;

(c) Liquidated damages in an amount equal to the amount of damages in (a) & (b);

(d) Reinstatement;

(e) All other compensatory damages resulting from the interference and/or retaliation;

(f) Reasonable attorney fees, reasonable expert witness fees, and all other costs of litigation; and

(g) For such other and further statutory, compensatory, and equitable relief as the Court deems just.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

JEANINE O'SHAUGHNESSEY, Plaintiff,

By: /s/ Colleen R. Lawless
Colleen R. Lawless, No. 6300808
Ashton N. Nowlan, No. 6317933
LONDRIGAN, POTTER & RANDLE, P.C.
1227 South Seventh Street
Springfield, IL 62705
Telephone: (217) 544-9823
Fax: (217) 544-9826
colleen@lprpc.com
ashton@lprpc.com